# CHARLESTON.

## OHIO RIVER R. CO. v. BLAKE.

Submitted January 15, 1894.—Decided February 3, 1894.

1. RECORD—JURY—FREEHOLDERS.

The record need not show in terms that a jury formed under section 17, c. 42, of the Code, in a proceeding to take land or material therefrom for public use are freeholders.

2. RECORD—JURY—FREEHOLDERS.

The record in such a proceeding shows that the jurors were "drawn, selected, tried, and sworn in the manner required by law." It will be presumed they were freeholders.

3. RECORD—JURY—FREEHOLDERS—PRESUMPTION—OBJECTION.

No objection having been sooner made against a juror for want of freehold qualification, it is too late after verdict in such a proceeding to make such objection based on affidavit or other evidence dehors the record.

4. RECORD—JURY—FREEHOLDERS—OBJECTION.

An objection to a juror for want of qualification comes too late after verdict.

5. NEW TRIAL—REMITTITUR.

In such case, the release of a portion of the compensation found by a jury as suggested by the court as a condition of the refusal of a new trial, and the refusal of a motion for a new trial on account of excessiveness in the amount found, is not error for the reason, if for no other, that the evidence furnishes data on which the compensation can be measured, and the reduced sum is not excessive.

6. NEW TRIAL—DAMAGES—RELEASE OF PART.

Can the court, in an action for a tort, where the law furnishes

no rule for the assessment of damages, on a motion for a new trial, based on excessiveness of damages, suggest the release of a part, and, upon such release being made, refuse a new trial? Cases of *Vinal* v. *Core*, 18 W. Va. 1, and *Unfried* v. *Railroad Co.*, 34 W. Va. 260 (12 S. E. Rep. 512) discussed in this regard.

VINSON, McDONALD & THOMPSON, for plaintiff in error cited Code, c. 42, s. 17; Id. c. 52, s. 14; 9 W. Va. 648; Id. 661; 18 W. Va. 1; 34 W. Va. 260; Id. 280.

CAMPBELL & HOLT, for defendant in error.

I.—*The record shows that the jurors were freeholders.*—9 W. Va. 648; 36 W. Va. 263.

II.—*The verdict was not excessive, and, under such circumstances, the action of the trial court compelling the defendant in error to take a smaller amount in place of a new trial, will not be disturbed.*—18 W. Va. 1; 34 W. Va. —.

BRANNON, PRESIDENT:

Under section 14, c. 52, Code 1891, the Ohio River Railroad Company made application to a justice of Cabell county to appoint commissioners to ascertain the compensation which it should pay to Cappie B. Blake for gravel which it proposed to take from land of Blake for use on its road, and, commissioners having been appointed, and returned their report to the Circuit Court, and Blake having excepted to it and demanded that such compensation be assessed by a jury, and a jury having assessed it, the company moved the Circuit Court to set the verdict aside, and, its motion having been overruled, the company brought the case here. The plaintiff in error points out as error that the court ought to have set aside the verdict because some of the jurors were not freeholders, as required by statute and constitution in such a case. Counsel say—First, that the record ought to show on its face that the jury was made up of freeholders; and, second, that at any rate, when it is shown dehors the record that it was not so composed, the verdict ought to have been annulled.

1. The record does not show its own error by its omission in words to say that the jury consisted of freeholders. It says that they "were drawn, selected, tried, and sworn in the manner required by law." The word "selected" im-

ports that they were freeholders—that is, that they were set apart from all other persons as required by law, which required them to be freeholders—and we would assume that legal qualification was an essential element in the act of selection. We would not assume that in it the law was not observed, and use this assumption to overthrow a proceeding, rather than presume what is reasonable to sustain it. The word would, from common understanding, import this; but, as used in such a proceeding, it has a legal signification, since section 14, c. 52, Code, says that if a jury be demanded, proceedings shall be according to chapter 42, and, turning to it, in section 17 we find that it says that "a jury of twelve freeholders shall be selected and impaneled," and hence the use of the words, "selected in the manner required by law," in the record of a proceeding under section 17, implies that the jury were freeholders. And the word "tried," in the order, imports that the jurors were tested as to their fitness and qualifications under the law. In Stephen's Case, 4 Leigh, 679, a capital felony case, the record said the jury came and were "elected, tried, and sworn the truth of and upon the premises to speak," and it was held that it need not expressly show that they were freeholders. Here the record says more in saying they were selected and tried in the manner required by law. I think that if it had not said so the presumption would be that the law was observed, and so the Stephen Case holds. This view is supported by *Bridge Co.* v. *Comstock*, 36 W. Va. 264, 275 (15 S. E. Rep. 69) and *Railroad Co.* v. *Patton*, 9 W. Va. 658.

It is argued that there ought to have been an order to summon freeholders, and that we are to infer that the jury was formed from the jurors attending for the trial of causes generally. Section 17, c. 42, which applies, says the jury shall be selected and impaneled in such a manner as the court may direct, and that "the cause shall be tried as other causes." Trial includes the selection of a jury, and I construe this statute as authorizing the formation of such a jury from those in attendance; and section 6, c. 116, has the broad provision that "all jurors required for trial of cases in any Circuit Court including cases of felony, shall

be selected" from those so in attendance for trials generally. Why except a jury in condemnation cases from these provisions? It is a case in the court. And then, how can we say in what way they were selected? No exception under this head was made at the time. We would presume they were selected as they should have been, as above stated.

2. But though the record is not vulnerable in failing on its face to show these things expressly, still the fact that some of the jurors were not freeholders is shown. Was this ground for new trial? No, because the exception came too late. The appellant knew its right to have freeholders on the jury. It could have had the court ask every juror as to his qualifications, or itself asked him. When the jury was being impaneled the court "called on the attorneys, if they had any objections to the jurors, or any of them, or to the manner in which they were sworn, to say so." The freehold qualification was not mentioned. It was a thing that could be either waived or required. It was thus waived. Are long, tedious, costly trials to be made nugatory, and justice delayed, for such causes? If the attorneys for the company did not know that the jurors were incompetent, they could have known by a few questions. It does not appear that they were ignorant of the jurors' disqualification, but, if they had been, I would say that it would make no difference, because, where a party is given by law the right to have jurors of certain qualifications, and sits by and does not ask them, especially when called on by the court to make any objections or suggestion, it is a waiver. Section 18, c. 116, Code, says that "no exception shall be allowed against a juror after he is sworn upon the jury on account of his age or other legal disability, unless by leave of the court." While the constitution gives the right to have jurors of certain qualifications, yet the legislature has the right to regulate the time of its enforcement to the end of the speedy administration of justice. Under this statute, in *Thompson's Case*, 8 Gratt. 637, it was held that objection to a venireman in a criminal case is too late after he is sworn. In the condemnation case of *Railroad Co. v. Patton*, 9 W. Va. 658, it was held

that the objection that jurors were not freeholders came too late after verdict.

The second point of error assigned is that, on the motion for a new trial, because the amount of compensation fixed by the jury was excessive, the court gave Blake election between accepting a less sum or a new trial, and, she accepting that sum, the court refused a new trial, whereas it ought to have given it. This assignment of error is based on the cases of *Vinal* v. *Core*, 18 W. Va. 1, and *Unfried* v. *Railroad Co.*, 34 W. Va. 260 (12 S. E. Rep. 512); the latter following the syllabus of the former case.

The law which these cases propound is that in all actions for damages, where the verdict is so enormous in amount as to clearly indicate prejudice, partiality, passion, or corruption in the jury in arriving at their conclusions, the defendant is entitled to a new trial, and it is error to allow the plaintiff to elect to take a less sum, suggested by the court, when there are no data before the court by which the smaller sum can be rightly and definitely ascertained, but which is fixed by the discretion of the court, unaided by evidence.

This doctrine we can not apply to the present case for two reasons: First, we do not regard the finding excessive so as to justify a court in setting it aside for that cause, and, this being so, of course there is no reversible error to the prejudice of the railroad company. The company took all the gravel bed, or all the gravel in a parcel of nearly six acres of land, on the Ohio river and on said railroad fifteen miles from the growing city of Huntington, and twelve miles from the Chesapeake & Ohio railroad, containing a deposit of thirteen feet of gravel, valuable in paving streets in towns and for railroad ballast. Removal of the ballast would remove the soil of the valuable land, and injure the residue of the tract. The assessment of two thousand nine hundred and thirty three dollars seems to me high, but not so as to justify us in overruling the verdict. A calculation of the product of this gravel deposit at a fair price under the evidence would produce more than double this sum, not to say anything of the destruction of soil and injury to the residue of the tract. The jury fixed

it. We see no partiality or prejudice. We can not value it as farming land. The owner is entitled to its peculiar value from its happening to contain a valuable deposit of gravel. *R. R. Co. v. Shepherd*, 26 W. Va. 672.

The second reason why said cases do not call for reversal, but justify the action of the Circuit Court in allowing a *remittitur*, or partial release of damages, is that, as above stated, we have *data* or basis on which to fix compensation and show that the sum fixed can do no injustice to the company. It is not like an action of tort, where there is no settled basis of estimation of damages. Here I could stop as to this assignment of error, so far as the decision of the case requires; but, as it is germane to the subject, I add that my examination has started doubt in my mind as to the correctness of point 23 in the syllabus in *Vinal* v. *Core*. It was *obiter*, because the court held that the verdict was not excessive, and could not have been set aside; and therefore the question whether, had it been so excessive as to call on the court to set it aside, it was error to accept a partial release of the damages found by the verdict did not arise.

Where there is a verdict legally speaking excessive, the right and duty of the court to set it aside can not be questioned. What is the point of objection? That the amount is too large. Then, if the court allows a part to be released, can we say that the defendant is deprived of the right to have the amount fixed by another jury, and that the court arbitrarily fixes the damages in allowing a reduction and usurps the function of a jury? I think not. The court has power over the question of damages. That settles the point. It has power to say whether the damages found are too great. This inevitably concedes that it has right to say that a given sum is too great, but that another sum is not; that, if the verdict had been for a given sum, it would not disturb it. Then, why can it not suggest a certain sum as a proper one? If the verdict were set aside, a new one may come back to the court for review. It may do so again. Why may not the court accept a reduction at once? It gives the court a healthy power and control over verdicts, and ends litigation. The defendant

is not hurt. The appellate court can yet be called upon to say whether the substituted sum is excessive. Where the action is based on contract, or in any case where there are legal rules or principles by which damages may be ascertained, it is clearly within the power of the court, as all concede, to allow a partial release, and render judgment for the reduced sum ; but in actions based on tort involving negligence, malice, wanton wrong, and like elements, where the damages are unliquidated, and there are no fixed rules of law by which to fix them, then it is said there can only be a new trial, and no release of part of the damages can be allowed, because it would deprive the party of a jury right under the constitution, and be an arbitrary assessment by the court. But the issue and assessment have been once before the jury, and the judge does not act arbitrarily, in suggesting or accepting a less sum, but by the light of the same evidence which guided the jury,

My opinion is that not only in actions for damages based on contract, or for civil injuries, where the law furnishes rules and principles for measuring damages, but also in actions based on tort, though the law does not furnish such rules and principles, but the amount of damages rests with the fair, impartial, and enlightened conscience of a jury, on a motion for a new trial the court may suggest or accept a less sum, and if the plaintiff accept it, overrule the defendant's motion for a new trial. The authorities are somewhat divided. Earlier authorities denied the proposition, perhaps, but later ones uphold it, and the great and decided preponderance of the highest authorities sustains it, to the ends of the exercise by the court of a salutary power over verdicts, and especially to end litigation.

I cite the following cases to support the opinion just expressed : *Railroad Co.* v. *Herbert,* 116 U. S. 642, 646 (6 Sup. Ct. 590); *Cattle Co.* v. *Mann,* 130 U. S. 69 (9 Sup. Ct. 458); *Branch* v. *Bass,* 5 Sneed, 366; *Corcoran* v. *Harran,* 55 Wis. 120 (12 N. W. Rep. 468); *Baker* v. *City of Madison,* 62 Wis. 150 (22 N. W. Rep. 141, 583); *Davis* v. *Southern Pac. Co.,* 98 Cal. 13 (32 Pac. 646); *Diblin* v. *Murphy,* 3 Sandf. 19; *McIntyre* v. *Railroad Co.,* 47 Barb. 515, affirmed in 37 N. Y. 287; *Hayden* v. *Sewing Mach. Co.* 54 N. Y. 221; *Doyle* v.

*Dixon,* 97 Mass. 208; *Gueray* v. *Kerton,* 2 Rich. Law, 507; *Blunt* v. *Little,* 3 Mason, 102; *Young* v. *Englehard,* 1 How. (Miss.) 19; *Woodruff* v. *Richardson,* 20 Conn. 238; *Black* v. *Railroad Co.,* 10 La. Ann. 33; *Belknap* v. *Railroad,* 49 N. H. 358; *Collins* v. *City of Council Bluffs,* 35 Iowa, 432; *Lombard* v. *Railroad Co.,* 47 Iowa, 494; *Whitehead* v. *Kennedy,* 69 N. Y. 462; *Jewell* v. *Gage,* 42 Me. 247; *Rolling Mill Co.* v. *Gillen,* 100 Ill. 52; *Railroad Co.* v. *Hodge,* 6 Bush, 141; *Cotton Wool Co.* v. *Mills,* 26 N. J. Law, 60; *Pratt* v. *Press Co.,* 35 Minn. 251 (28 N. W. 708); *Clark* v. *Brown,* 116 Mass. 504; *Lambert* v. *Craig,* 12 Pick. 199; 1 Suth. Dam. 813; *Railroad Co.* v. *Rahman,* 22 Ohio St. 446; *Redden* v. *Railroad Co,* 5 Utah, 344 (15 Pac. 262). As to torts, this doctrine is denied by some cases. *Nunnally* v. *Taliaferro,* 82 Tex. 286 (18 S. W. Rep. 149); *Carlisle* v. *Callahan,* 78 Ga. 320 (2 S. E. Rep. 751); *Koeltz* v. *Bleckman,* 46 Mo. 320. I have found but few cases clearly denying it. I observe that the opinion in *Nudd* v. *Wells,* 11 Wis. 415, referred to by Judge GREEN in *Vinal* v. *Core,* 18 W. Va. 60, has been called, as it was, *obiter,* and not followed in the later Wisconsin cases cited above.

Some of the cases admit a qualification in this: that where, in cases of tort, the amount of damages found by a jury is so enormous as to give evidence of prejudice, partiality, passion or corruption in the jury, the verdict ought to be set aside, and a new trial granted, without allowing a *remittitur* of part, and this because if such bad influences operated in producing the unjust verdict, so it likely operated upon the jury in passing on other matters in the case. *Lowenthal* v. *Streng,* 90 Ill. 74; *Stafford* v. *Hair Cloth Co.,* 2 Cliff. 82. There is force in this view, and yet why should not those other matters stand on their own merits? If there was no issue, and only the quantum of damages to be passed on by the jury, or if, where there are other issues, and the finding as to them is plainly right, why should not a *remittitur* be allowed? True, in cases where the case is nicely balanced, or involving credibility of witnesses, it would seem proper to apply this qualification; but that is only to say that this action is within the discretion of the court, and this question only an element in its

exercise, and it can refuse a *remittitur* when it thinks bad influences may have tainted findings on other matters; for the allowance or disallowance of a *remittitur* is within the sound discretion of the trial court, and its refusal to allow it would not, as I think, be a ground for reversal.

As I construe point 23 of the syllabus in *Vinal* v. *Core supra*, it places the ban on a *remittitur* in all cases based on tort, for it says that in all cases where there are no settled rules by which to measure damages, and the verdict is so large as to justify its being set aside, it must be unconditionally set aside. It applies the qualification above mentioned—that where passion, prejudice, or corruption appear, no *remittitur* can be allowed; and as, under point 22, a verdict can not be set aside for excess unless so enormous as to furnish evidence of those bad influences, it amounts to saying there can not, in tort cases, be any *remittitur*. I have doubt about *Vinal* v. *Core* and *Unfried* v. *Railroad Co.* in this respect.

My opinion is that it does not follow because a court sets aside a verdict in a case in tort because the damages are so excessive as to be attributable to partiality, prejudice, passion, or corruption, that those vices taint the finding on other matters so as to exclude a *remittitur*, but it is still within the discretion of the court to receive the release. If the court is satisfied with the case on other issues, it may allow it. I think the Ohio case of *Railroad Co.* v. *Rahman*, 22 Ohio St. 446, states the rule well as follows: "Where the damages assesssed by a jury are excessive, but not in a degree to necessarily imply the influence of passion or prejudice in their finding, the court, in the exercise of a sound discretion, may make the *remittitur* of the excess the condition of refusing to grant a new trial." Affirmed.