# CHARLESTON.

Roberts v. Bettman *et al.*

(English, Judge, *dissenting.*)

Submitted February 7, 1898—Decided April 22, 1898.

1. Oil Lease—*Construction of Lease—Forfeiture—Option of Lessor.*
   A lease for oil and gas contemplates that the lessee have two years in which to bore a well, and provides "that the party of the second part shall pay to the party of the first part $.00 per month in advance, until a well is completed, from the date of this lease, and a failure to complete such well, or to pay said rental when due, or within ten days thereafter, shall render this lease null and void, and can only be renewed by mutual consent, and no right of action shall, after such failure, accrue to either party on account of the breach of any covenant herein contained   *   *   *   It is further agreed that the second party shall have the right at any time to surrender this lease to the party of the first part, and thereafter be fully discrarged." The lessee bores no well, but holds the lease a number of months, and then

surrenders it. *Held,* that the forfeiture provisions are for the lessor's benefit, and he can avail himself of them to declare a forfeiture for nonpayment of rental or not, as he chooses, and, if he does not, can recover rental until the surrender of the lease. The lessee's mere failure to pay does not release him from obligation to pay. There was tacit consent to renew. (p. 145.)

2. OIL LEASE—*Recovery of Rental—Release.*

Where, under a lease, there may be recovery of monthly rental for a number of months, but not for all claimed by plaintiff, and he recovers a verdict for more than. he is entitled to, he may release the amount beyond the proper number of months, and defendant cannot complain of it. (p. 150.)

Error to Circuit Court, Tyler County.

Action by W. H. Roberts against M. A. and D. Bettman on covenants in a lease. From a judgment for plaintiff, defendants bring error.

*Affirmed.*

McCLURE & FORRER, for plaintiffs in error.

J. B. BLAIR and F. L. BLACKMARR, for defendant in error.

BRANNON, PRESIDENT:

Roberts made two leases of two tracts of land to Boyle for oil and gas purposes, by which Boyle agreed to pay a certain share of oil for oil wells, and a certain money rent for gas wells, should producing wells be bored. The leases contained the clauses: "It is agreed that the party of the second part shall pay to the party of the first part $100 per month in advance until a well is completed from the date of this lease, and a failure to complete such well, or to pay said rental when due, or within ten days thereafter, shall render this lease null and void, and can only be renewed by mutual consent, and no right of action shall after such failure, accrue to either party on account of the breach of any covenant herein contained. * * * It is further agreed that the second party shall have the right at any time to surrender this lease to the party of the first part, and thereafter be fully discarged." These leases were assigned by Boyle to M. A. and D. Bettman, partners. No well was bored under said leases. For some time the rental was paid, and then there was a failure to pay the rent for about nine months. For several

months after the first failure to pay the monthly rental
the Bettmans made no surrender of the lease, but finally
did so.   Roberts afterwards brought an action of covenant
upon the leases for the purpose of recovering the unpaid
monthly rentals.   He recovered a verdict for the monthly
rental of the whole period claimed by him.   The court,
upon a motion for a new trial, received a remittitur for
that part of the verdict covering the monthly rentals after
the surrender of the lease by the Bettmans, and gave judg-
ment for the balance of the verdict,—that part of it which
included rentals from the time when the Bettmans ceased
to pay them up until the surrender.   The Bettmans bring
the case here by writ of error.

The question before us is, I think, one of great impor-
tance in this State.   I surmise that there are many leases in
this State containing similar clauses to those above given,
and it is important that we give a fixed construction to
them.   The Bettmans advance the proposition that they
could retain these leases without any formal surrender of
their estate therein, and not bore for oil or gas, and not pay
rentals, and that they could not be made to pay rentals be-
cause of the provisions in the leases themselves; in other
words, that the very failure to pay would alone, under the
leases, absolve them from liability for such monthly ren-
tal.   If so, these leases are wholly one-sided.   Where does
the safety of the land-owner come in under such a con-
struction?   What does he get for making a lease for the
very purpose of having his land developed, or, in default
of development, to receive his rental?   He gets nothing
under this construction.   The lessee pockets his lease,
and awaits the chances of wealth from speculation, spend-
ing nothing.   The landowner gets naught, but perhaps he
has lost his all from having his land thus tied up.   Shall
we make such leases a delusion and a snare?   Did the
landowner ever dream that he was entering into a con-
tract of the import which the Bettmans would assign to
this contract?   Indeed, did the lessees ever so regard it
themselves?   If it is capable of such a construction against
the unwary, inexperienced landowner, it is a delusion and
a fraud, which no court ought to enforce.   But we can
give a construction to such leases which will vindicate and

protect the rights of both sides to them.  We can make
the leases themselves speak a language and intention which
shall subserve the purposes of right and justice.  Let us
look at the leases.  They affirmatively stipulate for month-
ly payment to the lessee of a fixed rental until the comple-
tion of a well.  Until the well is completed, that rental is
the compensation given the landowner for having granted
a monopoly as to oil and gas until a well comes in, and
then it stipulates for the payment of a share of the oil or a
fixed sum per gas well.  The purpose here is plain.  If we
say that the failure to pay that rental monthly *ipso facto*
releases the lessee from its payment, what is the use of
the provision for payment?  Why provide for payment, if
failure to pay alone nullifies the provision for payment?
The covenant to pay is brought to birth by the lease only
to die at the hands of its mother.  This construction ren-
ders the instrument self-contradictory.  The lease can-
not mean this nonsense.  We must attribute some other
meaning to it.  If such be the meaning, where is the need
of the clause giving the lessee right to surrender the lease
at any time and discharge himself?  If the other clause
was intended to release him from the obligation to pay,
this second clause, plainly made for the benefit of the
lessee, would be useless.  The clause stipulating for pay-
ment of rent is the only benefit which the lessor gets un-
til development shall give him what moved him chiefly to
make the lease, his share of oil, and he protected himself
against the insolvency of the lessee, or his failure to pay,
by the clause forfeiting the lease for failure to complete a
well or to pay rental.  That clause of forfeiture was de-
signed for his benefit, and not for the lessee's benefit.  It
was the lessor's only safety.  The clause giving the lessee
a right at any time to surrender the lease and discharge
himself from further liability is his ample shield.  This
construction gives all the clauses their fair operation.  This
construction is sustained by repeated decisions upon simi-
lar leases in the state of Pennsylvania.  Those decisions
are in a state where such questions have received more
mature consideration, from the wide-spread prevalence of
such leases, than in perhaps any other state, and they are
entitled to great regard in other states; and I feel justified,

as we have large interests of the kind in this State, in making a somewhat prolonged reference to them.

In *Galey* v. *Kellerman*, 123 Pa. St., 491, (16 Atl. 474), the lease said that a failure to complete a well or make the payment in lieu of it "renders this lease null and void and to remain without effect between the parties hereto." The lessees neither developed the territory nor paid rental in lieu thereof, and claimed that, as the lease provided that such failure should "render this lease null and void," it must be treated as void, not from and after the default, but *ab initio*, so that a cause of action accruing before or by reason of the default was extinguished by the lease itself. The court said: "This construction overlooks the character of the agreement and the relation of its covenants. The lessees secured by it the exclusive right to operate for oil and gas. On their part, and as consideration for the grant, they agreed to begin operations within sixty days, and within three months complete the first well. If they failed to do as they agreed, they promised to pay for delay $1,000 per annum. If they neither developed the land nor paid for their delay, they were, by such disregard of their contract, to forfeit all rights under it, and the lease was to be rendered thereby null and void. But the forfeiture did not happen until default. * * * The acts that forfeited their rights did not forfeit those of the lessor." The court held that the lessor could recover the stipulated rental for the time the lessees held the exclusive rights to operate. The court said that the construction contended for by the lessee transferred the punishment for the breach of the contract from him on whose default it arose to the injured party, and said: "We should need the constraint of insurmountable necessity to induce us to adopt the construction contended for."

In *Wills* v. *Gas Co.*, 130 Pa. St., 222, (18 Atl. 721), the lease provided that, on failure to drill a well within a specified time, the lessee should pay one thousand dollars annually in advance thereafter, and that failure by the lessee to perform any of his covenants should work an absolute forfeiture, and the lease shall thereupon become null and void; and it was held that said clause was intended for the

benefit of the lessor, and he had the option either to declare the forfeiture or affirm the continuance of the contract, and, if he did not choose to avail himself of the forfeiture, it could not be set up by the lessee as a defense to an action for the rent under the lease.

In *Leatherman* v. *Olliver*, 151 Pa. St., 646, (25 Atl. 309), the lease provided that the lessee should complete a well within six months, "or, in default thereof, pay to the party of the first part for further delay an annual rental of $500, payable quarterly in advance;" and that "a failure to complete said well or pay said rental for ten days after the time above specified for so doing shall render this agreement null and void, and it can only be renewed by mutual consent, and no right of action shall, after such failure, accrue to either party on account of the breach of any promise or agreement herein contained;" and it was held that on failure to drill the well the lessor was entitled to the stipulated rental, and that the latter clause did not deprive him of his right of action, as by the latter clause the parties meant that the lessor could not re-enter and treat the rights of the lessee as forfeited or abandonded on the day the default happened, but that he must give the lessee ten days of grace to make payment before he could take advantage of the default to terminate the lease, and that the lessee could not compel the lessor to re-enter so as to terminate the lease for the lessee's benefit, and that the lessee was entitled to recover his rental.

In *Phillips* v. *Vandergrift*, 146 Pa. St., 357, (23 Atl. 347), the lease provided that a well should be completed within a fixed time, or, in default, the lessee should pay a yearly rental, and that failure to complete such well or pay said rental "shall render this lease null and void, and not to be revived without the consent of both parties;" and it was held that such covenant was for the benefit of the lessor, and that the lessee by his own act of default could not relieve himself from a liability already incurred.

In *McMillan* v. *Philadelphia Co.*, 159 Pa. St., 142, (28 Atl. 220), the lease said that a "failure to complete such well, or comply with any of the foregoing conditions, or to make any of such payments within such time and at such place as above mentioned, renders this lease absolutely

null and void, and no longer binding on either party, and will revest the estate herein granted in the lessor, and release the lessee from all his covenants herein contained, he having the option to drill said well or not, or pay said rent or not, as he may elect." Yet the court held that "this clause is for the benefit of the lessor, and he may assert the forfeiture or forbear to do so." The opinion says: "He [lessee] may drill the well, and so pay no rental, or he may pay the rental, and not be compelled to drill the well. It is not for the lessor, but it is for the lessee, to elect which he will do. This option was deducible from the stipulations of the lease, but the parties chose to put it in words and make it part of the contract. The contention of the defendant destroys the character of the whole contract. It makes the lessee say that he will drill a well within a given time, or, failing to do so, that he will pay a monthly rental, but that he will do neither unless it pleases him, and, if he does neither, he shall be liable in no manner for his breach of contract. Such a construction is so unjust and absurd that the words relied upon as requiring it must be plain and unambiguous, and must be incapable of an exposition in harmony with the body of the contract, before we can consent to adopt it." The same doctrine will be found in *Cochran v. Pew*, 159 Pa. St., 184, (28 Atl. 219).

In *Conger v. Transportation Co.*, 165 Pa. St., 561, (30 Atl. 1138), the lease contained the clause: "A failure on the part of the second party to make any of the payments within 10 days after the time hereinbefore stated, and in manner provided for, renders this lease null and void, and to remain without effect between the parties, and it can be renewed only by mutual consent, and no right of any action shall, after such failure, accrue to either party by reason of the breach of any promise or agreement herein contained." And it was held that, upon failure to drill the well within twelve months, the lessor was entitled to the stipulated rental for each year of delay.

Thus, I say that the true construction of this lease on its face is not that which the plaintiff in error asks us to give it. Judge Dent suggests, also, that we may presume that the parties by tacit, mutual consent continued the lease,

and this would entitle the plaintiff to recover his monthly rental until such tacit prolongation of the leases ended by the lessee's express surrender of them. I think this suggestion is fair and strong. It only adds strength to the conclusion which we reach, that the plaintiff was entitled to recover his rentals until the surrender of the leases.

It is assigned as error that the court allowed the plaintiff to release a part of the verdict. I do not see how, if there be no other error against the party complaining,—if the facts make him liable to the amount for which judgment was rendered,—it lies in his mouth to complain of a release. Without further discussion, I refer to *Ohio River Co.* v. *Blake*, 38 W. Va., 718, 725, (18 S. E. 957). We therefore affirm the judgment.

English, Judge, (*dissenting*):

I cannot concur in the opinion of a majority of the Court handed down in this case, for the following reasons: William H. Roberts leased to W. D. Boyle, by separate leases, two tracts of land in Tyler County, W. Va., for the purpose and with the exclusive right of drilling for petroleum and gas, both leases being dated July 5, 1892, one of which tracts contained one hundred and twelve acres, and the other one hundred acres. About August 3, 1892, these leases were assigned to M. A. and D. Bettman, which assignments were signed by W. D. Boyle and William H. Roberts. The leases were thus transferred to said M. A. and D. Bettman, with all their covenants unchanged in any respect, except that the Bettmans were to pay the rentals instead of W. D. Boyle, which rents were to be paid at McCormick & Morrison's store, in Tyler County; and in these assignments by said Roberts and Boyle it was stated that a failure to pay these rentals for ten days for any month after they became due would render the said leases null and void, and they should be surrendered by Bettman & Bettman to Roberts, and the rentals should cease. No oil or gas was found on these tracts, and Bettman & Bettman notified Roberts that, unless he would reduce the rentals, they would surrender the property. This notice was given the latter part of November, 1892, and Roberts

replied, "All right; when you stop paying the rentals that ends the lease." By the terms of said lease, Bettman & Bettman were to pay one hundred dollars per month in advance until a well was completed, and it was positively agreed between Bettman & Bettman and Roberts that, when the rent was not paid when due, that fact of itself ended the leases, and neither should have the right of action against the other. On the 2d of October, 1893, said Roberts brought an action of covenant upon said two leases against Bettman & Bettman, partners, etc., making profert of the same, and purporting to set out the covenants and conditions therein contained in his declaration, claiming that eighteen hundred dollars of the rent became due and was owing to the plaintiff from said defendants, and still unpaid, contrary to the covenants in the two indentures contained, to the damage of the plaintiff three thousand dollars. On April 12, 1894, the defendants, by counsel, craved oyer of the deeds described in the declaration, read to them, and demurred generally to the plaintiff's declaration, in which demurrer plaintiff joined. Demurrer was overruled, and thereupon the defendants pleaded covenants not broken, conditions performed, and payment, to which the plaintiff replied generally, and issue was joined thereon. The action of the court in overruling defendants' demurrer to said declaration is assigned as error. Was this assignment well taken, and did the court err in overruling said demurrer?

By craving oyer of the leases sued upon, they became part of the declaration, and may be examined; and, when said leases are read and compared with the averments of the declaration as to the covenant they contained, it is perceived that in declaring upon said leases the pleader omitted in each instance, after the words, "and a failure to complete such wells or to pay said rental when due or within ten days thereafter, shall render the lease null and void," to insert the words, "and can only be renewed by mutual consent, and no right of action shall after such failure accrue to either party on account of any covenant herein contained;" which covenant is found in each of said leases made profert of in the declaration.

Let us next inquire what the effect is of craving oyer of

the leases sued on, and we find in the case of *Jarrett's Adm'rs* v. *Jarrett*, 7 Leigh, 93, it was held that if, in an action on a deed, plaintiff makes profert of the deed in his declaration, and defendant takes oyer of it, the deed is thereby made part of the declaration, and defendant cannot object to the deed as evidence on the trial, on the ground of variance. When, however, these leases were, by craving oyer, made part of declaration, can we say that the court acted properly in overruling the demurrer to the declaration as then presented, the lease being made part thereof? The declaration avers that the defendants failed to complete a well on said leases, and also to pay the rental when due, or within ten days, which would operate to render such leases null and void, and place them in such condition that they could only be renewed by mutual consent; and it was further covenanted that no right of action should, after such failure, accrue to either party on account of the breach of any covenants therein contained. It cannot be successfully controverted that this action was brought in direct opposition to this covenant. It cannot be said that this covenant was intended solely for the benefit of the lessor, because the express language of the covenant is that no right of action after such failure should accrue to either party on account of the breach of the covenants therein contained, and this covenant is just as obligatory upon the parties as any other it contains. Beach on Modern Contracts (volume 1, § 151), in speaking of sealed instruments and consideration, says: "The statutes merely make it necessary for the courts to gather the intention of the parties entirely from the instrument. They substitute the intention of the parties for the form of the instrument." And in section 473 the author says: "By release of all actions, actions real, personal or mixed are discharged, and so are all causes of action." And in section 482 he says: "A bond or covenant not to sue is equivalent to a release." And at section 735, speaking of the construction of deeds, says: "The construction of deeds follows the rules of law in regard to the construction of other contracts in writing. A deed of conveyance, like all other instruments, will be read by the court in the sense of the meaning of the parties. The intention will prevail

wherever such intention is unmistakably manifested, having regard to all parts of the instrument.  *  *  *  In determining the meaning of the parties, recourse must be had to the whole instrument.  *  *  *  The intention as gathered from the whole instrument must prevail." Parsons on Contracts (volume 2, p. 622), speaking of the construction of contracts, says: "So, for the same reason, all the parts of the contract will be construed in such a way as to give force and validity to them." In the case of *Barber* v. *Insurance Co.*, 16 W. Va., 658, this Court held (third point of sylabus) that in the construction of contracts the provisions thereof shall be taken into consideration, and reconciled, if possible, so that the true intent of the parties to the contract may be ascertained.

The plain and manifest intention of the parties to these leases was to avoid litigation. The plaintiff having made profert of said leases, and the defendants, by craving oyer of the same, having made them part of the declaration, we must look to the entire deeds for the contract which is sought to be enforced; and the intention of the parties, as it is disclosed by the deeds, constitutes the contract; and this, when ascertained by proper construction of the contract, will be enforced by the court. Looking, then, at these leases as presented by the pleadings, can we discover any right thereby conferred upon the plaintiff to recover rent after failure on the part of the defendants to pay the same when due? On the contrary, all said in regard to payment of rental is as follows: "The said rental shall be deposited to the credit of the party of the first part at——, or paid direct to said first party; and a failure to complete such well, or to pay said rental when due, or within ten days thereafter, shall render this lease null and void, and can only be renewed by mutual consent, and no right of action shall after such failure accrue to either party on account of the breach of any covenants herein contained." It was also agreed that the party of the second part should pay to the first party one hundred dollars per month in advance until a well was completed, from the date of said leases on each tract of land; and, further, that the party of the second part should have the right at any time to surrender said leases to the party of the first part, and thereafter should be fully discharged.

Now, even if it be true that the defendants suffered rent to accrue against them by their failure to surrender said leases promptly, yet it was expressly provided that a failure to pay said rental for ten days for any one month after it had become due, should make said indentures null and void, said rentals should cease, and the leases be surrendered. By the terms of the leases, the surrender of them was not a condition precedent to the ceasing of the rent, as stated in the declaration, but it was expressly provided, that, upon failure to pay the rent when due, or within ten days, the leases should be null and void, and could only be renewed by mutual consent, and no right of action should, after such failure, accrue to either party on account of the breach of any of the covenants therein contained; yet the plaintiff, by his declaration, claims rental for nine months after the alleged failure to pay. My conclusion, therefore, is that the plaintiff, on the face of his declaration, has shown that he is not entitled to sustain this action, and the court erred in overruling the defendants' demurrer, and judgment should have been rendered for the defendants on the demurrer.

*Affirmed.*