E. V. HAGER *et al. v.* C. C. WOLFE .

(No. 7071)

Submitted January 19, 1932.    Decided January 26, 1932.

*Jacob D. Smith* and *D. E. Wilkinson,* for plaintiff in error.
*A. F. Morris* and *Russel W. Morris,* and *S. P. Riddle,* for defendants in error.

MAXWELL, JUDGE:

In this suit to recover the aggregate accrued delay rental under an oil and gas lease the lessors, plaintiffs, E. V. Hager

and Mary F. Hager, his wife, recovered judgment against the lessee, defendant, C. C. Wolfe, in the sum of $919.00. There was a jury verdict as basis for the judgment. Writ of error was awarded the defendant.

The lease, dated March 11, 1925, was for the term of ten years and as long thereafter as oil and gas should be produced upon the premises by the lessee. Upon the failure of the lessee to drill within three months after the date of the lease he was required by the terms thereof to pay $50.00 annually as delay rental, in quarterly installments. The lessee made a few payments of delay rental and then, upon being advised by his counsel, who had examined the public records at the instance of the lessee, that the plaintiffs had no title to the oil and gas in the property covered by the lease, he declined to make any further payments. The plaintiffs seem to have instituted one or two justice-of-the-peace suits against the defendant on account of the delay rental, but those suits were dismissed. This suit was later instituted in the circuit court of Lincoln County. There was a general issue plea and a special plea of failure of consideration, the latter being based on the averment that although the ''plaintiffs own the surface of the said real estate,'' they had no right nor title to the oil and gas underlying the same.

The acre of ground covered by the lease, formerly occupied for school purposes, lies on Mud River at the mouth of School House Branch in Lincoln County. Two larger tracts of land cornered formerly at the mouth of the branch. The school house lot lies partly in each of said tracts. One of said tracts was formerly owned by D. H. Holmes and others who in 1887 conveyed the same to Fernandes Thompson with express exception and reservation of ''all the minerals, mineral substances and oils of every sort and description, in and upon said real estate.'' Thompson, an aged man at the time he testified, says that he thinks he later conveyed the land (minerals of course excluded) to Benjamin A. Barker.

It should be observed at this point that the public records of Lincoln County were destroyed by a courthouse fire in 1909.

The other of the two larger tracts which cornered at the mouth of School House Branch was formerly owned by J. W. Hager, who, in the course of certain litigation in 1890, disclaimed title to all minerals in, upon and underlying the said land. This disclaimer was in the form of a quitclaim deed which was properly recorded in Lincoln County in 1891, and, subsequent to the courthouse fire, was re-recorded in 1911. J. W. Hager and wife conveyed the said land to Benjamin A. Barker in 1893. This deed was likewise properly recorded and re-recorded.

In 1913, Benjamin A. Barker and wife conveyed the one acre schoolhouse lot to the Board of Education of Jefferson District, Lincoln County. The deed contained this reverter: "Should at any time that the property hereby conveyed cease to remain for school purposes then this land shall fall back to the parties of the first part."

In 1921, Benjamin A. Barker conveyed the same lot to the plaintiff, E. V. Hager, though there is no recital in the deed that the reverter clause in the last above mentioned deed had become operative. This is not serious, however, because there is in evidence a deed of the said Board of Education executed in 1928 conveying the said lot to the plaintiff, E. V. Hager. Although the reconveyance by the Board of Education was subsequent to the date of the deed made by E. V. Hager and wife to Wolfe, it discloses at least that there was no claim to the lot by the Board of Education at the time of the institution of this suit in 1929. This is mentioned more or less incidentally because the defense is not predicated on outstanding title in the Board of Education. As first above stated, the lease of the plaintiffs to the defendant was made in March, 1925.

The evidence as to outstanding title to the minerals, partly under the Holmes exception, and partly under the John W. Hager disclaimer, is not entirely satisfactory, but it is sufficient to show *prima facie* the correctness of the contention of the defendant as to the outstanding title to the oil and gas. On re-trial, the evidence of a competent surveyor would be of great assistance, and it is probable that records in the state auditor's office would also be of assistance.

In *Gaffney* v. *Stowers,* 73 W. Va. 420, syllabus four, 80 S. E. 501, 502, it was held: "Rent paid under a lease of land upon which the lessee could not safely enter on account of doubtful title in the lessor may be recovered back as money paid on a consideration that has partially failed, if paid without knowledge of facts showing defect in the title." Of course the converse of that proposition is likewise true, namely, that a lessee who could not safely enter on account of doubtful title in the lessor may on that ground defeat lessor's claim for delay rental under the lease. In approval of *Gaffney* v. *Stowers,* see *Gas Co.* v. *Jarvis,* 88 W. Va. 396, 106 S. E. 889. If there be total failure of consideration the lessee may, under the common counts in assumpsit, recover the rentals which he has paid. *Phila. Co.* v. *Shackelford,* 83 W. Va. 280, 98 S. E. 568.

Prior to the institution of this suit but subsequent to the time that litigation had developed between the parties concerning the rental, and while there was pending on appeal in the circuit court of Lincoln County a case which had been tried before a magistrate, the plaintiff, E. V. Hager, and the defendant had a conference with respect to the matters in difference between them. Their respective versions are as follows: E. V. Hager: "I went to his residence,—to his house, to his home, over here and asked him to surrender the lease and he wouldn't surrender it, and he said he wouldn't do it, he aimed to pay me. He said he aimed to pay me and keep the lease. He wouldn't, surrender it." C. C. Wolfe: "I remember he came to my house. At the time he came there to my house, he had brought suit against me. That suit had already been instituted in the Justice's court and he had judgment against me and it was appealed to the Circuit court here, and was pending at that time. He came to me and asked me if I would surrender the lease, that he had a chance to lease. I believe that was the reason, that he had a chance to lease it to somebody else. I told him that I would not surrender the lease unless he would dismiss this case. In other words, I wouldn't pay him any back rental and would surrender the lease along with it; if he would dismiss his suit, that I would surrender his lease, if he would dismiss

his suit that I had appealed to the Circuit court." On this aspect of the case the court, at the instance of the plaintiffs, over the objection of the defendant, gave to the jury the following instruction: "The Court instructs the jury that if they believe from all the evidence in this case that the defendant, with knowledge that the title of the plaintiffs to the oil and gas underlying the tract of land in controversy herein, was in dispute, on demand from plaintiffs, refused to surrender said lease that then they shall find for the plaintiffs." The defendant contends that the giving of this instruction involved error highly prejudicial to him, and he assigns the same as ground for reversal. We are of opinion that the instruction is prejudicially erroneous in this, that, whereas it appears from the above excerpts of testimony the defendant denies that he unequivocally declined to surrender the lease on the request of E. V. Hager but says that he consented to do so if Hager would dismiss his suit for rental, the instruction makes it appear that the defendant's refusal to surrender the lease was unconditional and unequivocal. In the light of the above recited evidence tending to establish that at the time of making the lease in 1925 the lessors had no title to the oil and gas underlying the schoolhouse lot, and in the further light of the variance to which we have just adverted between the proposition advanced by the instruction and the evidence pertaining to the same matter, we are of opinion that the giving of that instruction involved prejudicial error, and that by reason thereof a new trial must be awarded. The instruction as given was almost tantamount to the giving of an instruction expressly directing a verdict for the plaintiffs.

The lease contains this surrender clause: "It is agreed that this lease may be terminated at any time by the Lessee by the payment of One Dollar to the Lessor after recording a deed releasing the interest hereby conveyed and said Lessor from all the terms and conditions of this lease." The question is raised as to whether the defendant, not having surrendered the lease in the manner therein provided, can deny liability for delay rental. If the lease, otherwise valid, em-

braced property actually owned by the lessors, the lessee could not deny liability for delay rental prior to surrender. *Roberts* v. *Bettman*, 45 W. Va. 143. 30 S. E. 95; Thornton's Law of Oil and Gas (4th Ed.), Vol. 2, section 899; Mills & Willingham's Law of Oil and Gas, section 101. But the reason for this rule fails, if the lessors did not in fact own the oil and gas which they purported to lease. Why put the lessee to the necessity of doing the vain thing of surrendering a lease under which he could not safely enter on account of doubtful title in the lessors? Such is the *prima facie* showing in this record. If the lessors had no title, they could not rightfully have made a lease to anybody else therefore, under that premise, they were in no manner prejudiced by reason of the lessee's failure to surrender.

We reverse the judgment, set aside the verdict, and remand the case for a new trial.

*Reversed; remanded.*