### EMPIRE GAS & FUEL CO. v. PENDAR.*
### (No. 8107.)

(Court of Civil Appeals of Texas. Galveston.
June 29, 1922. Rehearing Denied Oct.
5, 1922.)

**1. Mines and minerals ⬳79(7)—Petition in suit to recover consideration for oil lease held to state cause of action.**

A petition in a suit to recover a consideration for the execution of an oil lease, on lessee's refusal to perform, *held* to state a good cause of action as against general demurrer.

**2. Mines and minerals ⬳79(1)—Lessor held entitled to recover consideration for execution of oil lease.**

Where an oil lease provided for a cash consideration on lessee's approval of title, and for the giving of four notes, after execution of the contract and approval of the title, the lessee became bound to pay such sum of money and to execute the notes, and, on his failure to do either, lessor was entitled to recover judgment for such sums.

**3. Principal and agent ⬳123(11)—Agent for lessee held authorized to execute oil lease.**

In a suit by lessor to recover the consideration of an oil lease, evidence *held* to support a finding that the person executing the lease on behalf of lessee was in fact lessee's agent with authority to execute the lease.

**4. Principal and agent ⬳23(3)—Agency may be established by habitual ratification in similar transactions.**

An agency may be established by showing that the alleged principal had habitually ratified the acts of the alleged agent in similar transactions.

**5. Principal and agent ⬳132(1)—Lease validly executed by agent held agreement of principal.**

Where it has been established that an agent executing a lease on behalf of the lessee was in fact the lessee's agent, with authority to execute the lease, the lease is the contract of the principal.

**6. Mines and minerals ⬳58—Oil lease held final, and not merely agreement to make contract subject to subsequent approval.**

An oil lease executed for lessee by an agent *held*, under the evidence, a final and binding contract, and not merely a tentative agreement to make a contract subject to subsequent approval and confirmation.

**7. Evidence ⬳461(1)—Evidence of statements held admissible to show intent to make oil lease final.**

In an action by a lessor to recover the consideration for an oil lease, wherein it was claimed that the instrument executed was only a tentative agreement to make a subsequent lease subject to ratification, statements by the agent and by lessee's attorney that the agent had authority to execute the contract, *held* admissible to show intent to make a final lease subject to lessee's approval of title.

**8. Mines and minerals ⬳73—Title under oil lease held to pass on execution thereof.**

Where an oil lease provided for a cash payment on approval by lessee's attorney of the title, and for certain other payments on signing the contract, title to the limited estate conveyed thereby passed to lessee, binding lessor from that moment.

**9. Mines and minerals ⬳78(2)—Forfeiture clause in oil lease held for benefit of lessor.**

A clause in an oil lease, forfeiting the lease if lessee should fail to perform his obligations thereunder, *held* designed for the benefit of the lessor, and not for that of the lessee.

**10. Mines and minerals ⬳78(7)—Lessor held entitled to recover, on lessee's failure to perform, amount of oil agreed to be paid, if produced.**

Where an oil lease provided for payment by lessee of a certain amount in oil, if oil should be produced from the leased premises by lessee, on a showing that lessee refused to recognize the contract and explore for oil, the lessor was entitled to a judgment for such amount.

**11. Mines and minerals ⬳78(4)—Lessor not required to forfeit oil lease for failure to perform, but entitled to sue for price agreed on.**

Where an oil lease authorized lessor to forfeit the lease for nonperformance, lessor, on lessee's failure to perform, was not required to forfeit the lease, but might stand on the contract and sue for the purchase price agreed on, in which case the measure of his recovery could not be lessened by what he might have obtained from leasing to another, nor by the value of the oil remaining under the soil.

**12. Appeal and error ⬳1050(1)—Erroneous admission of notice to produce instruments held nonprejudicial.**

In an action by lessor for a consideration under an oil lease, wherein plaintiff gave written notice to defendants to produce certain instruments, erroneous admission in evidence of the notice, on defendant's failure to comply therewith, *held* not prejudicial, since it could not have influenced the verdict, proof of the contents of the instruments mentioned in the notice having been admitted.

**13. Evidence ⬳187—Whether notice to produce writings was given held question for judge.**

Where plaintiff gave notice to defendant to produce certain written instruments, which notice was not complied with, whether the notice was or was not given was for the trial judge and not for the jury.

**14. Evidence ⬳121(7)—Evidence of statements of lessee's agent as to his authority to execute oil lease held admissible as res gestæ.**

In a lessor's action for the consideration of an oil lease, evidence of statements by lessee's agent and by his attorney that the agent had authority to execute the lease *held* admissible to show the res gestæ of the transaction.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction November 22, 1922.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by Oliver S. Pendar against the Empire Gas & Fuel Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Robt. D. Garver, of Bartlesville, Okl., T. F. Garver, of Fort Worth, and Hutcheson, Bryan & Dyess, of Houston, for appellant.

Andrews, Streetman, Logue & Mobley and Sam Streetman, all of Houston, for appellee.

LANE, J. Appellee, Oliver S. Pendar, brought this suit against appellant, Empire Gas & Fuel Company, March 18, 1919, to recover upon a contract, the essential parts of which are set out below.

The cause was tried upon the plaintiff's first amended petition, filed June 3, 1920, together with his supplemental petition filed two days later.

The contract sued upon, omitting nonessential paragraphs, is as follows:

"The State of Texas, County of Harris.

"Know all men by these presents that Oliver S. Pendar, Minnehaha county, state of South Dakota, hereinafter called lessor, for and in consideration of the sum of sixty thousand ($60,000.00) dollars, paid and secured to be paid by the Empire Gas & Fuel Company, a private corporation, duly incorporated under the laws of the state of Maine, and having an office at Houston, Tex., and the further covenants and conditions hereinafter stipulated to be kept and performed by the said Empire Gas & Fuel Company, does hereby lease and let unto the said Empire Gas & Fuel Company, hereinafter called lessee, the following described tract of land, to wit:

"The southwest one-quarter of the northeast one-quarter, and the north one-half of the south one-half, and the northwest one-quarter of section 11, township 20 north, range 15 west, in Caddo parish, state of Louisiana, consisting of 397.26 acres of land.

"And does hereby grant unto the said lessee the exclusive right of easement to drill and prospect for oil and gas on said tracts of land for a period of five years from the date hereof, and so long thereafter as oil or gas are produced in paying quantities therefrom, under the terms and conditions herein contained, together with the right of ingress and egress in and upon said tracts of land and the right to construct and maintain thereon and remove therefrom all such machinery, appliances, buildings, pipe lines, and storage facilities and other structures necessary and proper in the prospecting, development and production of oil or gas from the leased premises.

"(2) The lessee binds and obligates itself that it will, within a period of sixty (60) days from the date hereof, begin the actual drilling and boring of a well on some portion of the premises hereby leased, for the purpose of producing oil, gas, or other minerals therefrom, and will thereafter prosecute the drilling and boring of such well in good faith diligently and in workmanlike manner, using all proper tools and appliances until such time as such well shall have been completed as a pro-

ducing one or abandoned as a dry hole, and thereafter the lessee shall continue such drilling operations upon said premises in the same manner as is hereinabove provided for in the case of the first well, and operations hereunder shall be successive in the sense that not more than ninety (90) days shall elapse between the date of completion of one well as a producing well, or its abandonment as a dry hole, and the commencement of another well, until such time as the leased premises shall have been thoroughly developed for oil and gas. If oil or gas is found in one or more wells upon the leased premises the lessee agrees thereafter to operate the same with due diligence. And as a part of the consideration for the execution of this lease the lessor shall have and receive:

"(a) A one-sixth (⅙) part of all oil saved from that produced from each well drilled, so long as the average daily production from such well shall be above two hundred (200) barrels of forty-two (42) gallons each, per day of 24 hours for 30 consecutive days, and one-eighth (⅛) part of all oil saved from that produced from each well drilled, so long as the average daily production shall be two hundred (200) barrels or less, which royalty to the lessor shall be delivered to him free of cost to any pipe line connected with the wells.

"(b) The lessor shall have and receive a one-eighth (⅛) part of the market value of all natural gas sold, used, or marketed by the lessee off of the leased premises, settlement therefor to be made quarterly. Meters for measuring said gas to be furnished and set at the expense of lessor, the manufacture of meters and setting of same to have approval of lessee; basis of calculation to be 16-ounce pressure.

"(c) The lessor shall have and receive a one-eighth (⅛) part of the market price of all gas produced from wells upon the leased premises where such gas is used for the manufacture of gasoline, the same to be metered at lessor's expense and as indicated in above clause, at the gasoline plant where used. But it is understood and agreed that the lessee shall have the free use of oil and gas as shall be necessary and proper for the purpose of carrying on drilling and development operations upon the leased premises, and likewise the free use of water from streams and wells drilled thereon by lessee. * * *

"(3) As hereinabove stated, the consideration to be paid by the lessee for the execution of this lease on the part of the lessor, is the sum of sixty thousand ($60,000.00) dollars, which consideration is payable in the following manner:

"Five thousand dollars ($5,000.00) in cash when the title to the property herein described has been examined and approved by the attorneys of the lessee. Lessor agrees to at once have prepared and to furnish lessee with a full and complete abstract of title to the property herein described, and it is agreed that attorneys for lessee shall have fifteen (15) days from and after delivery of such abstract of title within which to examine the title to said property and report their findings relative thereto. Should said attorneys of lessee find objections to said title which in their opinion demanded correction and could be corrected then lessor shall have fifteen (15)

days within which to correct and meet such objections as shall have been urged to said title. When all objections urged by attorneys for lessee have been met and the title has been approved by said attorneys, then the lessee agrees to pay the consideration of sixty thousand ($60,000.00) dollars, above named, in the following manner: Five thousand ($5,000.00) dollars cash upon the examination and approval of title by attorneys of lessee, as above provided for, and twenty-five thousand ($25,-000.00) dollars in the form of certain promissory notes of even date herewith executed by the lessee and payable to the order of the lessor, each for the principal sum of sixty-two hundred and fifty ($6,250.00) dollars, said notes being numbered from one to four, inclusive, and maturing in their numerical order in 6 months, 12 months, 18 months, and 24 months, respectively after date, each providing for interest from date until maturity at the rate of 8 per cent. per annum, interest payable semiannually, both principal and interest payable at the Hanover National Bank, of New York City, N. Y. Also as part of the above-mentioned consideration, the lessee agrees and obligates itself to pay to the lessor the sum of thirty thousand ($30,000.00) dollars in oil to be produced from the leased premises by lessee if the same is so produced, which thirty thousand ($30,000.00) dollars will be payable in the following manner: The lessee will deliver to the lessor, in the same manner as is hereinabove provided, one-half of all the oil belonging to said lessee from the oil produced upon said leased premises, until such time as the lessor shall have received a sufficient quantity of oil at the then market price of same as will equal the sum of thirty thousand ($30,000.00) dollars.

    *     *     *     *     *     *     *

"(8) If the lessee shall fail or neglect to keep and perform each and all of the obligations incumbent upon it as hereinabove provided, this lease shall become null and void. If the estate of either party hereto is assigned, and the privileges of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to the assigns and successive assigns.

Executed in triplicate originals, at Houston, Tex., in the presence of the undersigned competent witnesses and before the undersigned notary public, this 26th day of November, 1918. Oliver S. Pendar, Lessor. Empire Gas & Fuel Company, By J. W. Jolly, Local Manager, Lessee. Witnesses: A. D. Dyess, M. Hall.
    "[Seal]        H. F. Montgomery.
    "Notary Public, Harris County, Tex."

After setting out material portions of the contract and attaching a copy of same to his petition as an exhibit, plaintiff, Pendar, alleged as follows:

"(4) That in accordance with the terms of said contract hereinbefore set out, plaintiff, in the manner and within the time prescribed by said contract, did furnish lessee with a full and complete abstract of title to the property therein described, and plaintiff's said title to said land was on, to wit, the 19th day of December, 1918, approved as provided in said contract by the attorneys for the lessee, whereby and whereupon said contract became and has ever since been and still is completely executed and performed by and on the part of the plaintiff, and thereupon and thereby said defendant promised, agreed, and became bound and liable to pay to plaintiff the said consideration of sixty thousand dollars ($60,000.00) as provided by said contract; that is to say: The said defendant thereupon became and still is bound and liable to pay to plaintiff said sum of five thousand dollars ($5,000.00) in cash, with legal interest from December 19, 1918, and yet, although expressly requested to do so, said defendant has wholly failed and refused to pay said sum or any part thereof, to plaintiff's damage in the sum of six thousand dollars ($6,000.00).

"And the defendant thereupon likewise became bound and liable to execute and deliver to plaintiff its four certain promissory notes, each for the sum of six thousand, two hundred and fifty dollars ($6,250.00), payable to the order of plaintiff, and providing for interest thereon from the 26th day of November, 1918, until the respective maturities of said notes, at the rate of 8 per cent. per annum, but that, notwithstanding said agreement and obligation and although expressly requested so to do by plaintiff, defendant has wholly failed and refused and continues to fail and refuse to execute and deliver said notes, or any of the same, as in said contract provided.

"That by reason of the premises and by reason of defendant's failure and refusal to execute and deliver said notes as provided, defendant became thereupon and still is bound to pay to plaintiff the face amount of said notes, to wit, $25,000, with interest thereon from November 26, 1918, as provided in said contract, and yet to pay the same or any part thereof defendant has wholly failed and refused, to plaintiff's damage in the further sum of thirty thousand dollars ($30,000.00).

"If mistaken in the allegation that, by reason of defendant's failure and refusal to execute and deliver said notes as provided, defendant became bound and liable to pay in money the amounts thereby represented, then, and only in that event, plaintiff represents in the alternative that the defendant was legally and equitably required to then deliver said notes, and having failed to do so, plaintiff is entitled to recover of and from defendant such sums of money with interest as it would have the right to recover at this time, if defendant had in fact delivered said notes in accordance with its agreement, to wit, the principal and interest of so many of said notes as might be due at the time of the trial hereof, with the further right reserved to recover, when the same shall become due at that time.

"That said notes, if so executed and delivered by the defendant in accordance with the terms of said agreement, would have been each of the value of the principal of said notes respectively and the interest therein provided, the defendant being amply solvent for the amount of said notes, and that by reason of the failure and refusal of defendant to so pay said sum in cash and execute and deliver said notes, as aforesaid, plaintiff has been damaged in the sum of thirty-six thousand dollars ($36,000.00).

"(5) That the defendant wholly failed and refused to begin the drilling of any well upon said property within 60 days after November 26, 1918, the date of said contract, as it

had the right and privilege to do, and as by the terms of said contract it was obliged to do, and thereby willfully and voluntarily deprived itself of the ability to pay said $30,000 in oil as in said lease provided, whereby said sum of $30,000 became and is payable to plaintiff in money, with lawful interest thereon from and after the date of the breach of said agreement to drill, to wit, from and after January 25, 1919, and yet, though often requested to pay the same or any part thereof, defendant has wholly failed and refused, to plaintiff's damage in the further sum of thirty-five thousand dollars ($35,000.00).

"And if mistaken in the allegation that said further sum became payable in money, then, and only in that event and in the alternative, plaintiff alleges that the lands hereinbefore described and covered by said lease were oil lands, and that, if the defendant had complied with its agreements and undertakings as hereinbefore set out, with respect to drilling and boring wells upon said lands and developing the same for the production of oil and gas, the same could and would have produced oil in paying quantities and in quantities sufficient so that plaintiff would have, in accordance with the terms of said contract, received a sufficient quantity of oil produced from said premises to equal the sum of thirty thousand dollars ($30,000.00) agreed by the defendant to be delivered and paid to plaintiff as the further consideration for the execution of said lease; but that notwithstanding this agreement and undertaking, the defendant has wholly failed and refused to begin the drilling or boring of any well on any portion of said premises, as in said contract provided, and has wholly and completely failed to comply in any respect whatever with said provisions of said contract, and by reason of such failure plaintiff has been further damaged in the sum of, to wit, thirty-five thousand dollars ($35,000.00).

"(6) That said contract provided as follows:

" 'If the lessee shall fail or neglect to keep and perform each and all of the obligations incumbent upon it as hereinabove provided, this lease shall become null and void.'

"That said clause was inserted for the benefit of the plaintiff as lessor, and that plaintiff, if he had a right so to do, has never heretofore avoided or sought to avoid said contract or lease by reason of the failure of defendant to pay the purchase price therefor, or by reason of defendant's said failure to drill and develop said land, but on the contrary, both expressly and by insisting upon and demanding the compliance by defendant with the terms of said lease as to payment of said purchase price, plaintiff has heretofore affirmed said lease, and the same, unless and until forfeited by a breach of condition subsequent therein, has been in full force and effect, and plaintiff has at all times performed fully and completely all and singular the obligations devolved upon him by said contract, and said contract, so far as plaintiff is concerned, was fully and completely executed upon the execution and delivery of said lease and upon the approval of plaintiff's title as aforesaid, and plaintiff is entitled to recover the purchase price agreed to be paid therefor by defendant, as hereinbefore more fully set out.

"Premises considered, plaintiff prays for judgment for his debt, damages, interest, and costs of suit, and for such other relief, both general and special, as he may be entitled to, either at law or in equity, and as in duty bound will ever pray."

The defendant, Empire Gas & Fuel Company, answered by general demurrer, by specially excepting to the measure of damages as alleged by plaintiff, by specially alleging that the notes which the contract provided the Empire Gas & Fuel Company should execute, if same had been executed, were not at the time of the filing of the suit due and payable, and that the suit was prematurely brought.

For further answer it denied generally; specially alleged that J. W. Jolly, who signed the name of the Empire Gas & Fuel Company to the instrument sued on as local manager for said Empire Gas & Fuel Company, had no authority to execute the same for said company. It alleged that the instrument had in fact never been executed as a final and binding contract, but only as a tentative agreement, subject to subsequent approval and confirmation.

In his supplemental petition plaintiff alleged, first, that J. W. Jolly, who signed said contract for the Empire Gas & Fuel Company, had express authority to sign and execute said instrument for said company; second, that said J. W. Jolly had implied authority to execute said instrument; third, that the Empire Gas & Fuel Company had held out Jolly as having authority to execute said instrument; and fourth, that said Empire Gas & Fuel Company had ratified the act of Jolly in executing said instrument.

The case was tried before a jury upon special issues, and their answers to such issues are substantially as follows:

(1) J. W. Jolly had both actual and implied authority from defendant, Empire Gas & Fuel Company, to enter into the contract of date November 26, 1918, and to bind defendant thereby.

(2) At the time the contract was signed by J. W. Jolly, the defendant company held Jolly out as its agent, with authority to execute such instrument in its behalf and to bind it thereby.

(3) At the time O. S. Pendar signed the contract in question, he did so in good faith, in the exercise of reasonable prudence, relied upon such holding out, and was thereby induced to execute said contract.

(4) It was the intention of all the parties participating in the execution of the contract to bind both the plaintiff, Pendar, and the defendant, Empire Gas & Fuel Company, thereby absolutely, and not only in the event of the after approval of said contract by said Empire Gas & Fuel Company.

(5) The fact that said contract had been executed was communicated to the Empire Gas & Fuel Company and after such com-

munication said company did not, within a reasonable time, notify Pendar that Jolly had no authority to execute said contract for said company, and that Pendar suffered injury by reason of the failure of said company to promptly notify him that it would not be bound by said contract.

(6) The Empire Gas & Fuel Company did not, after all facts relative to the contract were made known to it, approve, ratify, and confirm the same.

Upon the answers of the jury to the issues submitted and the evidence, the court rendered judgment in favor of the plaintiff, O. S. Pendar, against the defendant, Empire Gas & Fuel Company, for the sum of $73,086.50, with interest thereon from the 6th day of December, 1920, at the rate of 6 per cent. per annum. From such judgment, the Empire Gas & Fuel Company has appealed.

Appellant has presented 105 assignments of error but in its brief has grouped them into 40 propositions. We shall not undertake to discuss all these propositions, but shall undertake to condense them into a few questions, the answers to which will dispose of all the material contentions of appellant. These questions are as follows:

(1) Should the general demurrer to the petition of the plaintiff have been sustained?

(2) Should the suit have been abated upon the plea of the defendant that it was prematurely brought?

(3) Was or was not J. W. Jolly in fact the agent of the defendant company, with express and implied authority to execute the contract sued upon?

(4) Admitting that Jolly was the agent of defendant with authority to execute the contract, was such contract executed as a final and binding contract, or was it only a tentative agreement subject to subsequent approval and confirmation?

(5) Did the failure or neglect of the lessee, Empire Gas & Fuel Company, to keep and perform the obligations it had assumed by the contract, render the contract absolutely void, or were the provisions of paragraph 8 of the contract inserted for the benefit of appellee, Pendar, to be taken advantage of at his option? in other words, did these provisions afford the lessee the right to escape its obligation to pay the $60,000 named in the contract as the consideration for the lease, by its failure and refusal to perform its undertakings?

(6) Was the plaintiff entitled to judgment for the $30,000 which defendant had, by the terms of the contract, agreed to pay in oil, if oil should be produced from the leased premises by defendant, upon showing that defendant had refused and was refusing to explore for oil as it had agreed to do?

· After a careful examination of briefs of both parties, the pleadings, and the facts proven, we have reached the conclusion that all of these questions should be answered adversely to the appellant.

[1] (1) The petition presents a good cause of action and is not subject to general demurrer. We have at great length, in the first part of this opinion, set out the material parts of the plaintiff's petition, and we deem it unnecessary to say more with reference to the general demurrer addressed thereto, as a discussion of other questions will more fully present our reasons for holding the petition good as against general demurrer.

Appellant presented its special demurrer to so much of the plaintiff's petition as sought a recovery of the $25,000 of the recited consideration in the contract. which was to be evidenced by four promissory notes, and prayed that suit therefor should be abated because it is shown on the face of the petition that the sums sued for were not due and payable at the time the petition was filed.

[2] Assuming that the contract was the contract of appellant, appellant had agreed, that upon approval by its attorneys of the title to the land leased, to pay appellee $60,000 in the following manner: $5,000 cash as soon as the title was approved, and $25,000 in the form of four notes for the sum of $6,250 each, executed by it and payable to the order of appellee, the first 6 months from the 26th day of November, 1918, and the remaining three in 12, 18, and 24 months, respectively, after said date last named. Having made such contract and promise, appellant became bound to pay said sum of money and execute said notes, and, upon its failure to do either, appellee was entitled to sue, and recover judgment for said sums of money. Bowman v. Bronson, 111 Mo. 343, 19 S. W. 634; Wasser v. Western Land S. Co., 97 Minn. 460, 107 N. W. 160; Young & Kuhen v. Dalton, 83 Tex. 497, 18 S. W. 819.

In the case last cited the court said:

"The defendants were bound to execute their note, payable in nine months, for the price stipulated. When they refused to execute the note they committed a breach of the contract, and gave to plaintiff the right to sue immediately for the price. The defendants did not have the right to violate the contract with regard to the execution of the note and still have the credit that was agreed to be given them. The plaintiff's right to sue arose out of the breach of the agreement to execute the note, and the damages in such case are the price of the property. Hanna v. Mills & Hooker, 21 Wend. 90; Hays v. Weatherman, 14 Ind. 341; Reinhart v. Olivin, 5 Watts & S. 162; Benj. on Sales, §§ 764, 765."

In the present case the due date of all the notes to have been executed had passed at the time of the trial. The present suit was predicated upon appellant's express written agreement to pay a certain sum for the execution of the lease; and appellee, having executed and delivered the lease, and

the condition subsequent having been met, that is, the approval of the title by appellant's counsel, appellee was entitled to sue and recover the amount which appellant had expressly agreed to pay as the consideration for the lease; assuming, of course, that the contract was in fact the contract of appellant. Woodland Oil Co. v. Crawford, 55 Ohio St. 161, 44 N. E. 1093, 34 L. R. A. 62; Davidson v. Hirsch, 45 Tex. Civ. App. 631, 101 S. W. 269; Racke v. Brewing Ass'n, 17 Tex. Civ. App. 167, 42 S. W. 774; Whited v. Johnson (Tex. Civ. App.) 167 S. W. 812.

Was the contract the contract of appellant?· Had appellant expressly or impliedly clothed J. W. Jolly with authority to execute the lease contract for appellant? Relative to these questions the following facts were shown:

(1) Sale of oil lease from Mars McLean and D. J. Harrison to Empire Gas & Fuel Company, dated October 31, 1917. This instrument was signed "Empire Gas & Fuel Company, per J. W. Jolly, Agent." It assigned to appellant oil leases upon two tracts of land, one containing 127 acres of land, and the other 43 acres of land, at a price of $210 per acre, in addition to payment of royalty.

(2) Assignment of leases of land in Liberty county, Tex., from Mars McLean and Dan J. Harrison to Empire Gas & Fuel Company "doing business in the state of Texas under a permit with J. W. Jolly of Houston, Harris county, Tex., as its duly authorized agent." This instrument required payment of a consideration of $33,633, in addition to payment of royalties therein provided. Negotiations concerning these transactions were carried on by J. W. Jolly on behalf of Empire Gas & Fuel Company.

An important question arose ·as to payment of rentals; Jolly decided this question under circumstances precluding the possibility of its having been referred to any other person.

Defendant paid the cash consideration through a check given by Jolly. They also paid the deferred payments evidenced by notes. Appellant drilled six wells on that lease, and was producing oil therefrom at the time of the trial.

(3) On August 11, 1917, R. C. Duff execut· ed a transfer to appellant of an oil lease on certain lands in Harris county, Tex. The money consideration in this lease was $20,-000. The agreement was signed "Empire Gas & Fuel Company, by J. W. Jolly, Mgr., Tex." It was executed in the same office where the contract in question was executed. The cash part of the consideration was paid by draft drawn by Jolly on appellant through the Union National Bank of Bartlesville, Okl., and was paid. Notes, originally execut ed by Jolly, afterwards substituted by other notes, representing the deferred payments, were also paid.

(4) On July 17, 1917, Julia D. Welder executed to the Empire Gas & Fuel Company an oil and mineral lease on 200 acres of land in Harris county, Tex. The lease was signed "Empire Gas & Fuel Company of Texas, by J. W. Jolly." It was acknowledged by J. W. Jolly "as agent of the Empire Gas & Fuel Company."

(5) On March 17, 1917, Julia D. Welder executed a lease to appellant covering certain lands in Harris county, Tex., and the lease was signed "the Empire Gas & Fuel Company by J. W. Jolly, agent." It was acknowledged by "J. W. Jolly, agent of the Empire Gas & Fuel Company." The original consideration of $100 was paid in money sent from the office of the Empire Gas & Fuel Company at Bartlesville, Okl. Appellant has also paid the $500 each six months for the continuation of the first lease above mentioned. "When these leases were executed Mr. Jolly' was there representing the Empire Gas & Fuel Company." The $1,000 paid for the lease above mentioned to Mrs. Welder was paid on a draft signed "Land and Leasehold Department, by J. W. Jolly."

(6) On September 4, 1916, J. W. Groesbeck executed an assignment to appellant of an oil lease. The consideration was $3,500. It was signed on behalf of the Empire Gas & Fuel Company "by J. W. Jolly, manager."

(7) On January 29, 1919, an assignment was executed by Empire Gas & Fuel "by H. R. Straight, president." This instrument recited that "on the 28th day of March, 1917, the Empire Gas & Fuel Company, a private corporation, with an office and place of business in the city of Houston, Harris county, Tex., acting by and through its agent, J. W. Jolly, did execute and deliver to E. B. Selden, etc., a certain transfer or assignment of all its rights, etc., to the north one-half of 300 acres of land; and whereas said J. W. Jolly had full authority and power from said Empire Gas & Fuel Company to make and execute said instrument: Now, therefore, in consideration of the premises the Empire Gas & Fuel Company do hereby ratify and confirm the said act of the said J. W. Jolly in making and executing the instrument herein referred to." The instrument above referred to which had been executed by said J. W. Jolly as the agent of the Empire Gas & Fuel Company was also introduced in evidence.

Each and all of the foregoing instruments were shown to have been recorded in the proper records of Harris and Liberty counties.

J. W. Jolly testified, in effect, that at the time the contract in this case was executed he had stated that the contracts theretofore executed by him for the Empire Gas & Fuel Company had not been turned down by said company, but confirmed, and that the statement so made by him was true. He also testified that his jurisdiction at that time

extended over all the coastal territory in which the company was operating, or in which it anticipated operating, as far east as portions of Louisiana and as far west as the Texas line; that the Empire Gas & Fuel Company had no one in such territory superior in office to him, and that he was the man in the coastal territory that was superior to everybody else outside of headquarters.

[3] We think that there were such facts and circumstances proven as would amply support the findings of the jury that J. W. Jolly was in fact the agent of the appellant, and that he had the express and implied authority to execute the contract in question for it.

[4] It is, we think, well settled that an agency may be established by showing that the alleged principal had habitually ratified the acts of the alleged agent in similar transactions. I. & G. N. Ry. Co. v. Ragsdale, 67 Tex. 24, 2 S. W. 515; Collins v. Cooper, 65 Tex. 464; Birge Forbes Co. v. Ry. Co., 53 Tex. Civ. App. 55, 115 S. W. 333; Foss-Schneider Brewing Co. v. McLaughlin, 5 Ind. App. 415, 31 N. E. 838; Thompson v. Mills, 45 Tex. Civ. App. 642, 101 S. W. 560; Bergtholdt v. Porter, 114 Cal. 681, 46 Pac. 738; Ry. Co. v. Simmons, 6 Tex. Civ. App. 621, 25 S. W. 998.

In I. & G. N. Ry. Co. v. Ragsdale, supra, in speaking of agency, it is said:

"It might be established by circumstances, and among others the recognition by defendant of acts on his part similar in character to these in controversy."

In Mechem on Agency (2d Ed.) vol. 1, § 717, it is said:

"But more than this is true. The methods of dealing of the particular principal may be material frequently by way of estoppel, as shown in a later section, but often also to show actual authority. For it is entirely clear that the continued conduct of the principal may be used to show how a grant of power was intended to be interpreted, and, further, the voluntary acquiescence of the principal in the known course of conduct of the agent may serve to show that such conduct was in fact authorized. This does not depend upon estoppel, but is an inference of fact to be drawn from conduct."

[5] Having reached the conclusion that the finding of the jury that J. W. Jolly was in fact the agent of appellant in the execution of the lease contract, it follows that we must hold that such contract is the contract of appellant.

This, then, brings us to a consideration of the fourth question: Was such contract executed as a final and binding contract, or was it, as contended by appellant, only a tentative agreement to make a contract subject to subsequent approval and confirmation?

[6] The jury found, in answer to special issue No. 5, that it was the intention of both Jolly, agent of appellant, and appellee. Pendar, at the time the contract was executed, to bind both appellee, Pendar, and appellant, Empire Gas & Fuel Company, thereby absolutely, and in answer to special issue No. 6 they found that the fact that the contract had been so executed was communicated to the appellant. We think these findings of the jury were supported by the evidence.

Appellee, Pendar, testified, substantially, that before he signed the instrument he inquired as to the authority of J. W. Jolly to execute the contract for appellant; that he had asked for that information in the presence and hearing of Mr. Jolly, because he wanted to be sure before signing the lease that both parties would be bound thereby; that he did not want to be tied up without the other party being also tied up; that in answer to his inquiry both Jolly and Mr. Dyess, attorney for appellant who prepared the lease contract, told him Jolly had the authority to execute the contract for appellant, that Mr. Dyess said to him in the presence of Jolly:

"Mr. Pendar, as soon as this lease is signed you are just as sure of your $30,000 as you are that you are standing right here to-night."

[7] The foregoing testimony, which was objected to by appellant, was, we think, admissible to show that it was the intention of the parties to execute, on the day the instrument was signed, an absolute, final, and binding lease, and that its terms could not have been avoided by either party thereto without the consent of the other, unless the attorney of appellant for a bona fide reason should have failed to approve the same when submitted to them for that purpose, or unless, upon some breach of the contract by the lessee, the lessor could do so by virtue of the terms thereof.

[8] The consideration expressed in the contract was $60,000, which was to be paid by the lessee for a limited estate in the land of the lessor. When the contract was signed by J. W. Jolly and lessor, Pendar, and delivered by Pendar to appellant's agent, Jolly, on the night of the 26th day of November, 1918, the title to the limited estate conveyed thereby passed to appellant. Pendar from that moment was bound by the conveyance. The appellant from that moment had the title to the estate conveyed, subject to the terms of the deed of conveyance. Pendar had done all that he could do to pass the title intended to be conveyed, and so far as he was concerned the contract was completely performed. It was executed. Nothing further remained for him to do.

We next come to the fifth question: Did the failure of neglect of the lessee to keep and perform the obligations it had assumed under the contract render such contract ab-

solutely void, or were the provisions of paragraph 8 of the contract inserted for the benefit of appellee, Pendar, to be taken advantage of at his option? In other words, did the forfeiture provision of the contract afford the lessee the right to escape its obligations to pay the $60,000 named in the contract as the consideration for the lease, by its failure and refusal to perform its undertakings under said contract?

[9] It is well settled, we think, that the clause of forfeiture was designed for the benefit of the lessor, the owner of the land, and not for the lessee's benefit. Roberts v. Bettman, 45 W. Va. 143, 30 S. E. 95; Leatherman v. Oliver, 151 Pa. 646, 25 Atl. 309; Clemenger v. Flesher (Tex. Civ. App.) 185 S. W. 304.

The contract in the case of Roberts v. Bettman, supra, contained a clause stipulating that the lessee should pay to the lessor $100 per month in advance, until a well is completed, from the date of the lease; that a failure to complete such well or pay the rental when due, or within ten days thereafter, should render the lease null and void. The court held in that case that the clause of forfeiture was designed for the benefit of the lessor and not for the benefit of the lessee.

In Leatherman v. Oliver, supra, in passing upon a forfeiture clause such as the one in the present contract, the court said:

"The clause relied on by the defendant provides, first, that, if no well is drilled, and the rent remains unpaid for ten days after it is due, the agreement shall be null and void, and shall not be renewed, except by mutual consent. This, as we have repeatedly said, is for the protection of the lessor, and not of the defaulting lessee. * * *

But the lessor in this case did not choose to insist on the forfeiture, when the ten days expired. No one could assert it for him, except under his direction. No one could compel him to assert it. Certainly the defendant, who had promised to drill a well or to pay the rental of $500 per year, if he failed to complete a well within six months, and as against whom a right of action had accrued upon the happening of his default, could not compel his lessor to re-enter for his, the lessee's, benefit. He might surrender. He could divest himself of his interest in the lease, but he could not strip his lessor of his rights under that instrument, or of a cause of action already accrued."

In Clemenger v. Flesher (Tex. Civ. App.) 185 S. W. 304, the court said:

"The paragraphs of the contract providing for the contingencies under which it may be forfeited inured to the benefit of the plaintiff alone, and that unless the appellee's action was defeated by an election to declare the contract forfeited, as pleaded by them, that then the judgment must stand."

Again:

"Upon the failure of appellants to drill a well upon appellee's premises within the 90-day period specified in the contract, and upon the further failure to pay rentals as in the lease contract provided, appellee clearly had two remedies. He might, under the terms of the lease contract, have declared the lease void and have insisted upon its cancellation; or he might, as he later did do in this suit, declare upon the contract and recover of appellants the specified rentals."

[10] We are now brought to a consideration of the sixth question: Was the plaintiff entitled to judgment for the $30,000 which defendant had by the terms of the contract agreed to pay in oil "if oil should be produced from the leased premises" by defendant, upon a showing that defendant had refused and was still refusing to recognize the contract and to explore for the oil on the leased land as it had obligated itself to do?

This question, we think, should be answered in the affirmative. The undisputed evidence showed that appellant not only failed, but positively refused to proceed with the performance of its express agreement to drill upon said land and develop the same for oil. The time within which it agreed to drill had expired long prior to the trial of this suit and long prior to the filing of plaintiff's first amended original petition on June 3, 1920.

The simple question arising out of these undisputed facts is whether a lessee which has reserved the right to pay a part of the consideration for the execution of the lease in oil to be produced from the premises, and which has expressly agreed to develop said property, can defeat its obligation to pay the amount payable in oil by breaking its agreement to drill and produce oil from the premises.

The judgment of the trial court is sustainable upon either of two theories, which lead to the same result: (1) That a party who agrees to pay a sum of money in a certain commodity which he is to produce and who fails to produce such commodity, is bound to pay the amount stipulated in money; and (2) if proof is necessary to show that the commodity could have been produced, the burden is upon the party breaking its agreement to show that, if the agreement had been kept, the commodity would not have been produced.

In the specific case, appellant agreed to drill upon and develop the leased premises for the production of oil. Its obligation to that effect was not merely implied, but was express and definite. By the execution of the lease it acquired the exclusive right to do the only thing which would absolutely demonstrate whether oil could be produced from the property or not. It therefore not only assumed the obligation of testing the property, but it rendered it impossible for appellee to do so. The question therefore is, under such circumstances, whether appellant could be heard to say that if it had complied

with the contract, oil would not have been produced in sufficient quantities to discharge its obligation; or, to put it differently, under such circumstances was the burden upon appellee to show that if appellant had kept its obligation, it would have produced the oil when appellant destroyed the only means by which such proof could have been absolutely made?

In 13 Corpus Juris, pp. 631, 632, it is said:

"A contract or promise to pay may be restricted to a particular fund so as to make the raising of the fund or the sufficiency of the fund a condition precedent to the liability, and in such case the promise cannot be enforced, unless the failure to raise or collect the fund from which payment is made is due to the neglect or to the unreasonable refusal to act of the promisor, or is otherwise attributable to him."

In 6 Ruling Case Law, in section 325, it is said:

"One who prevents or makes impossible the performance or happening of a condition precedent upon which its liability, by the terms of a condition, is made to depend, cannot avail himself of its nonperformance. Likewise, where the promise is to pay out of a fund to be realized in a certain way, there is an implied obligation to use reasonable diligence in performing the act upon which payment is contingent. In default of such diligence, payment becomes due without performance of the condition."

See Gliddon v. McKinstry, 25 Ala. 246; Nunez v. Dautel, 19 Wall. 560, 22 L. Ed. 161; Rumsey Elec. Mfgrs. Co. v. Livers, 112 Md. 546, 77 Atl. 295; Denny v. Campbell's Ex'r (Ky.) 4 S. W. 301; Dill v. Pope, 29 Kan. 289; Linn v. Butler, 8 Colo. 355, 8 Pac. 588; Navigation Co. v. Wilcox, 52 N. C. 481, 78 Am. Dec. 260; Park v. Swartz, 110 Tex. 564, 222 S. W. 156; Williams v. Bank, 2 Pet. 96, 7 L. Ed. 360; Mains v. Haight, 14 Barb. (N. Y.) 81; Williston v. Perkins, 51 Cal. 554; Brackett v. Knowlton, 109 Me. 43, 82 Atl. 436; Jones v. Walker, 13 B. Mon. (Ky.) 163, 56 Am. Dec. 557.

The cases cited very conclusively support our conclusions, but in the great length of the opinion we refrain from quoting from any of them.

[11] Appellant also contends that the right of appellee to recover should have been restricted to a recovery of damages for a breach of the contract, and that, as he still owned the leased land, he could not recover judgment for the $60,000 named in the contract as the consideration for the lease.

This contention cannot be sustained. Upon appellant's failure to pay the purchase price for the lease, or to perform other obligations he had assumed under the contract, appellee might have declared the contract at an end and might have taken possession of the leased premises and sued for damages for the breach; but he was not required to do so. He had the right to stand upon the contract and sue for the purchase price agreed upon, and in such case the measure of his recovery would not be lessened by what he might have obtained from leasing to another or by the value of the oil or other minerals remaining under the soil. Davidson v. Hirsch, 45 Tex. Civ. App. 631, 101 S. W. 269; Woodland Oil Co. v. Crawford, 55 Ohio St. 161, 44 N. E. 1093, 34 L. R. A. 62; Racke v. Brewing Ass'n, 17 Tex. Civ. App. 167, 42 S. W. 774; Whited v. Johnson (Tex. Civ. App.) 167 S. W. 812; Roberts v. Bettman, 45 W. Va. 143, 30 S. E. 95; Leatherman v. Oliver, 151 Pa. 646, 25 Atl. 309; and other authorities above cited under the other propositions.

It is apparent from what we have said that we think appellee was entitled to recover the contract price of the lease. His suit was one for the contract price and not one for specific performance or for damages.

Prior to the trial the plaintiff gave defendant written notice to produce in court a number of written instruments alleged to be in its possession or control. Upon the trial the instruments not having been produced, counsel for the plaintiff, over the objection of defendant, introduced in evidence before the jury said written notice. Appellant insists that the refusal of the court to sustain its objection constitutes reversible error.

[12, 13] That the admission of the notice as evidence before the jury was error, we have no doubt. While it was proper to show to the court that such notice had been served on defendant, so that the court might be prepared to pass on the admissibility of secondary evidence to prove the contents of the instruments mentioned, we are unable to perceive how it could be thought that the fact that the notice was given to defendant could have enlightened the jury upon any matter material to the issues involved in the suit. Whether the notice to produce the instruments was or was not given was a question for the determination of the trial judge and not for the jury. We would not be justified, however, in reversing the judgment because of such error, as it can hardly be conceived that the introduction of such notice could have influenced the jury in arriving at their verdict, in view of the fact that, after such introduction, the court admitted proof of the contents of the instruments mentioned in said notices.

Appellant also insists that the court erred in permitting appellee, Pendar, while testifying in his own behalf, to state that J. W. Jolly had stated at the time the contract was signed, that he (Jolly) was the agent of appellant, and that A. D. Dyess, appellant's attorney, who had prepared the contract, had at that time said that Jolly had signed several similar instruments for appellant and that he had never heard of any of them being

turned down, and Dyess had also told him (Pendar) that if he signed the contract he would be sure to get the $30,000.

Appellee was insisting at the time the foregoing statements of Jolly and Dyess were made that he did not want to sign the contract and be bound thereby unless he was assured that both parties would be bound, so as to make the instrument a binding agreement of both parties. We think the testimony objected to was admissible as tending to show that it was the intention of the signers of the instrument to make it a final binding contract from the time of its execution, and not only a tentative agreement subject to subsequent approval and confirmation.

[14] We think the testimony was also admissible to show the res gestæ of the transaction, it being shown that the statements of Jolly, the agent, and Dyess, the attorney, of appellant were made at the very time of the negotiations and execution of the contract. Missouri Val. Bridge & Iron Co. v Ballard, 53 Tex. Civ. App. 110, 116 S. W. 93; White v. San Antonio Waterworks, 9 Tex. Civ. App. 465, 29 S. W. 252.

While there are many assignments of error in appellant's brief which we have not discussed, we have examined them all and have reached the conclusion that none of them present reversible error.

Having reached the conclusion as above expressed the judgment is affirmed.

Affirmed.