## BROOKS v. MITCHELL.
### No. 3817.

Court of Civil Appeals of Texas. Texarkana.
March 20, 1930.

Rehearing Denied April 3, 1930.

W. B. Hamilton, of Dallas, and O. C. Mulkey, of Commerce, for appellant.

L. L. Bowman and R. R. Neyland, both of Greenville, for appellee.

HODGES, J.

The appellee sued the appellant, M. M. Brooks, and his son, W. J. Brooks, on a promissory note for $8,470, dated May 1, 1927, and payable to the appellee on demand. W. J. Brooks filed no answer and made no defense in the court below. M. M. Brooks answered by a general demurrer, general denial, and a verified plea denying the execution of the note by him or by any other person authorized to sign his name to the note.

The evidence shows that the name of M. M. Brooks was signed to the note by his son, W. J. Brooks. The note is the last of several renewals of a former note for $5,000 given for money borrowed by W. J. Brooks from the appellee. The loan to W. J. Brooks was made through S. B. Brooks, a nephew of the appellant and cashier of the First National Bank of Greenville. The principal question involved in the trial was the authority of W. J. Brooks to sign appellant's name to the note.

The jury found, in answer to a special issue, that W. J. Brooks had authority from M. M. Brooks to sign his (M. M. Brooks') name to the note. It is insisted in this appeal that this finding is not supported by the evidence.

The appellee, Mitchell, testified: "When this loan was first made Mr. S. B. Brooks handled the whole transaction. My recollection is that the amount of the first note was $5,000.00; it is now $8,470.00; that is due to the fact that there were several renewals besides this one, and in each renewal the amount of the due interest was added. * * * The first transaction in making this loan through S. B. Brooks was had about '18 or '19; I am not definite as to the date, my recollection is that it was around ten years ago. A portion of the time it was to draw eight per cent. interest, I don't know how long, I would say probably three or four years. And then along about that time, in 1921 and 1922, money was getting a little tight and I told Mr. Brooks that if they wanted to renew the note I wanted ten per cent. interest. He said: 'All right, I'll see Will about it.' * * * I have had the note in my possession at all times, except the times that Sam Brooks would take it to have it renewed."

S. B. Brooks, the principal witness for the appellee, testified as follows: "At the time he (W. J. Brooks) came here M. M. Brooks made arrangements with the bank concerning them; Judge Brooks had two sons here in the city, and he told me to take care of them, that they had authority *to sign his name to paper*. His two sons were *W. J. Brooks* and *Barry Brooks*. Judge Brooks told me that even before W. J. Brooks moved here, he lived near Farmersville and he used to come over here sometimes when he wanted money. Judge M. M. Brooks gave me the authority I have stated when Will Brooks first moved here, just about that time, at least fifteen years ago, I can't tell you the exact time. *I did let W. J. Brooks have money, on his father's name signed by him.* Some of these transactions were had with the

*First National Bank, but not all of them; some were had with me individually,* and with various other parties, among them being the First National Bank of Greenville, myself, S. B. Brooks, George H. Symonds, Charles T. Kennedy, B. J. Mitchell, L. N. Byrd,—I cannot name any others, but there might be more. Judge M. M. Brooks never made any objection to any of these transactions. I had conversations with him in regard to some of these notes, many conversations with him about them. He never did, in any of these conversations, make any objection to W. J. Brooks executing notes and signing his (M. M. Brooks') name to them. I recollect the transaction in which B. J. Mitchell loaned money to W. J. Brooks; I cannot tell you definitely when that money was loaned to Mr. Brooks, I cannot be sure about that; I imagine it was around 1920, it might have been a year or two later, I have no way of fixing the date in my mind. I was connected with that transaction; I made it; I was representing Mr. B. J. Mitchell at the time."

The witness was then questioned with reference to a number of transactions between himself and M. M. Brooks and his son. Those transactions occurred between the time the original note was executed and November, 1927. After testifying as to many details, he said: "During all the period of time I have detailed in which these transactions were had by W. J. Brooks signing his father's name to notes and checks, the first time I ever heard of any objection being made to it by M. M. Brooks was after the taking over of the First National Bank by the Greenville National Exchange Bank. I do not know how this money was used that Will Brooks borrowed from Mr. B. J. Mitchell; I do not remember that. At the time of the original transaction and at the time the renewal was made Judge M. M. Brooks had informed me that Will Brooks had authority to sign his name."

Again he testified: "I testified yesterday that the Mitchell note had been renewed several times. I told Judge Brooks about the Mitchell note many times before the fall of 1927; he never made any objection to it. * * * Judge Brooks nearly always had some individual notes in the bank, and Will Brooks would very often sign the renewals of those notes. There was never any objection made by Judge Brooks to Will Brooks' signing the renewals of his individual notes."

The testimony of this witness on direct and cross-examination is rather lengthy. Much of it was but a repetition of what has been quoted, and some of it irrelevant to the issue that was submitted.

The appellant, who testified in his own behalf, denied giving any such authority to his son to sign his (appellant's) name to notes. He also denied that he had ever told S. B. Brooks that his son had such authority. He denied in detail many other material statements made by S. B. Brooks. That conflict presented a question for the jury, which was decided against the appellant, and we do not feel justified in disturbing that decision.

From the testimony of S. B. Brooks the jury had a right to conclude that appellant, knowing that his son, W. J. Brooks, would need financial assistance, told S. B. Brooks that his son had authority from him to sign his name to notes executed for borrowed money; that after being apprised of the execution of such notes, appellant made no objection to that use of his name until the latter part of 1927. The assignments raising the question of the insufficiency of the evidence are therefore overruled.

█ █ The witness S. B. Brooks was permitted to testify, over an objection, that appellant had on a previous occasion made a large deposit and paid off some of the notes of W. J. Brooks to which his (appellant's) name had been signed by W. J. Brooks. He also testified, over objection, that W. J. Brooks would at times sign his father's name to checks used to pay off some of the notes which he (W. J. Brooks) had executed to the bank and other parties. While the mere payment of the notes was probably insufficient to prove that the signing of appellant's name thereto had been previously authorized, such conduct was a circumstance to which the jury might look in passing upon an issue so sharply contested. Authority to sign one's name to a contract may be proved by circumstances as well as by direct testimony. Empire Gas & Fuel Co. v. Pendar (Tex. Civ. App.) 244 S. W. 184; I. & G. N. Ry. Co. v. Ragsdale, 67 Tex. 24, 2 S. W. 515; People's Bldg., Loan & Savings Ass'n v. Keller, 20 Tex. Civ. App. 616, 50 S. W. 183. We do not think the testimony admitted was subject to the objection that it was irrelevant and immaterial.

█ While on the stand testifying in his own behalf counsel for appellant asked him the following question: "Have you at any time, Judge Brooks, ratified the signing of your name to that note?" Before the objection offered was passed upon, the witness answered, "No, sir, never on earth. I did not know it was in existence." The court then sustained the motion to strike the above statement out. That ruling is assigned as an error. The issue of ratification was not submitted by the court. The sole question was, Did the appellant authorize W. J. Brooks to sign appellant's name to the notes? During the course of his examination the appellant testified at length as to what he had said and done with reference to various transactions with S. B. Brooks and the bank after the execution of notes by his son. He was permitted to testify in detail with reference to every disputed fact. We are of the opinion that there was no error in excluding the testimony.

In a' well-arranged and able brief counsel for appellant have presented a number of other assignments attacking the rulings of the court in the admission and exclusion of testimony. All of those assignments have been carefully considered. In some of them objections to testimony as irrelevant and immaterial probably should have been sustained. But after a careful consideration of the whole record, we are of the opinion that the admission of such testimony does not require a reversal of the judgment.

■ The court permitted both parties to take a wide range in the introduction of testimony, and both sides produced evidence that might have been excluded without affecting the controlling issue in the case. After all, the pivotal question was, did the appellant authorize his son to sign his (appellant's) name to the note? In reviewing the verdict of the jury we must look at the testimony in its most favorable light from the standpoint of the party in whose favor the issue was determined.

The judgment will therefore be affirmed.